We'll hear the next case on the calendar, Crawford v. Cuomo. ZACHARY MARGOLIS-ZONIMA Good morning. May it please the Court, my name is Zachary Margolis-Zonima, I'm joined at council table by Victoria Medley, we represent the plaintiff's appellants, James Crawford and Thaddeus Curiton in this matter. The question before the Court, Your Honor, today, in the second visit to this Court for this case, is whether as of the time of the conduct in March 2011, a reasonable corrections officer would have been on notice that what this defendant is alleged to have done was a violation of the Eighth Amendment. And we respectfully submit to you that there is no question at all he would have been on notice because of a litany of published and societal information and holdings and reasoning that would have put him on notice. The first of those, of course, is this Court's decision in Bodie from 1997. That was followed by decisions in the Eighth, Ninth, Tenth, and D.C. circuits, all of which made it clear to corrections officers that they're not allowed to, for their own sexual gratification, grope prisoners on their genitals. Can I just bring you back to Bodie? Sure. And of course we know that going forward after Crawford, this is a different case. I want us to come back to Bodie. And so when you look at the actual holding of Bodie, its factual holding, I should say, it says that a small number of incidents in which the inmate allegedly was verbally harassed, touched, and pressed against without his consent were insufficient to state a claim. So before our decision in Crawford won, why wouldn't this factual holding help be a problem for you? Well, the main reason is that the conduct here is more severe than what happened in Bodie. And what Bodie really stands for is this idea, coming off of the prior Eighth Amendment jurisprudence, that sexual abuse is akin to causing injury, a real severe punishment that violates the Eighth Amendment. So that sex abuse is in a different category. Every push and shove isn't a violation of the Eighth Amendment. But every time you fondle and grab someone's penis when you're their corrections officer is. But that's what happened in Bodie. So why is this so obviously, clearly foreshadowed by Bodie? I would think that this is kind of within the range and it might be a little worse, a little better, not as bad. I don't know. But isn't it within the ballpark of Bodie such that a reasonable officer would think the facts of this would result in the same decision, i.e. dismissal, of the court in Bodie? So there's two reasons for that. One is this conduct's worse because we're alleging fondling and grabbing. And you all, in Crawford, described how that was serious and that that was more serious in some ways than what happened in Bodie. And I don't think it said that directly, but it is. Fondling and grabbing is more serious than the touching in Bodie. There's another reason that's more subtle. And that is that the officer in Bodie was female. And at the time, according to the footnote 10 in Crawford, the 2015 decision in Crawford, it wasn't recognized that female-on-male sexual abuse caused the kinds of harm that male-on-male or male-on-female sexual abuse caused. So that a corrections officer reading that decision in Bodie would have known, should have known, that if a male does this, because at the time that was seen as worse, that the conduct here is much more forceful and threatening than what was done in Bodie. Is there a decision suggesting that male-on-male was worse that would have been sort of the governing decision at the time of the conduct in 2011? There are many, many, many decisions in that time range and coming forward suggesting that all sexual abuse is worse. And in the circuit courts, the decisions are of a piece on that point. Let's go to the decisions in our circuit and the district decisions. There are some 27 decisions cited to us. And 26 out of the 27, and correct me if I'm misunderstanding, rejected inmate sexual abuse claims. And if that's so, if lower courts understood Bodie in one way, then how can we say that it was unreasonable for an officer to understand it in the same way? I understand the principle and why that would give you pause. I think you have to dissect those even a little more finely. I counted 21, but I'm sure you're right on the 27. Whatever it is, it's a lot. It's a couple of dozen. There are a lot. Right. But a large number of those are from, sorry, only 15 of those are between 1997 and 2010, which would have been the relevant period between Bodie and the conduct here, number one. Number two, a large number of those, I wrote it down somewhere, were cases on summary judgment, where discovery was taken to get the details of what happened and the officer's motivations. So that's eight of them at least were on summary judgment. Eleven of them involve legitimate path searches, where there was, here there's no counter to our allegation that this groping had nothing to do with a legitimate path search. I expect that to happen if we're given an opportunity to take discovery, and then you guys can decide that, or the district court will have to look at that on summary judgment, whether there was a legitimate penological reason for the officer's conduct. But in the cases that, in many of those cases that were decided on summary judgment, there were, sorry, in many of the cases decided whether on summary judgment or not involved legitimate path searches, which we allege was not the case here. And finally, there's a few unreasonable decisions. I'll concede that. There's a few decisions that you're going to, I mean, that this Court would find are unreasonable that would have been brought by pro se plaintiffs, and they would have been reversed if they had gone up. We know that now from Crawford. And you have, the other important case is this Court has, the other important point is this Court has never held that in determining whether a law is clearly established, you should look at district court decisions. This Court has always held you should look at this circuit and the Supreme Court, other circuits, and legislative enactments. I have a long list of legislative enactments. I'm out of time. You know what they are. They're PREA. They're the New York, the New York penal law. And there are penal laws around the country which are, again, of a piece that this conduct is illegal, objectionable. And all of that happened in the 90s, in the 2000s, well before 2011 when this officer is claiming that he thought it was okay to fondle the inmate. I don't disagree that the district courts don't establish the law in this area. But if so many district courts interpreting the law interpreted one way that is similar to the way that the government is interpreting it, how can we say that it was clearly established? Well, again, I think there's only . . . That's the question. I mean, that's . . . It's a question. Yeah. Okay. You'll have three minutes for rebuttal. May it please the Court. The conduct alleged in this case is deplorable. But numerous district courts in this circuit found comparable or worse conduct not to violate the Eighth Amendment. Accordingly, a reasonable corrections officer might not have thought it violated the Eighth Amendment either. For that reason, qualified immunity is appropriate. And the district court decisions here are especially powerful evidence of, I guess, confusion in the lower courts for a couple reasons. Number one, they kept being issued after all of the various evidence that my friend on the other side just referred to came out. After the PREA, after the state criminal bans had accumulated by 2009, after all the out-of-circuit decisions had taken hold. I think the latest one was 2003 out of the Tenth Circuit. Still, decision after decision of the district courts in this circuit found comparable or worse conduct not to violate the Eighth Amendment. And the second point on the district court decisions is, you know, one of the equivalent standards that this court sometimes recites for qualified immunity is whether the unconstitutionality of certain conduct is beyond debate. Here, there's a subset of those district court decisions that literally engages on debate on this very issue. What about in this case the argument that the behavior was qualitatively different from that in Bodie? And that if you read the Bodie decision, perhaps up until you get to that factual finding, you would think that this kind of behavior clearly should not be tolerated. The factual finding in Bodie raises the question of what kind of particular conduct is allowable or not. Why isn't this a case of a qualitatively different kind of conduct? Well, I think it's different in some ways qualitatively. Like my friend on the other side said, it's maybe better, maybe worse in some ways than the conduct in Bodie. But it's not so far removed from the conduct in Bodie to have been clearly established as unconstitutional at the time. In both Bodie and here, you've got the CO using some measure of force and some measure of secrecy. In Bodie, there was some measure of secrecy in getting all the witnesses out of the room before the abuse took place. Here, in fact, there wasn't that. There were onlookers who at least ex-ante could have presented the possibility of stepping in and doing something. We think the conduct, the touch in Bodie and then the genital-on-genital contact through clothing was fairly extreme. Conduct here is, again, comparable in some ways, in some ways not. But again, Bodie, after reciting the facts in that case, came out with a holding of no Eighth Amendment violation. So I don't think you could fairly say that a case that recites that level of sexual abuse, and Bodie did indeed call it, quote, sexual abuse. The district court in Bodie actually called it sexual assault. But when a decision of this Court says no Eighth Amendment violation, I don't think that clearly establishes what would be an Eighth Amendment violation going forward. Again, Bodie seemed to fill a void before Bodie district courts in this case didn't even acknowledge that sexual abuse, sexual harassment of COs on inmates could be cognizable. Bodie filled that void by saying, yes, it could, and essentially leaving it to the district courts to fill in those gaps. And the way the district courts interpreted Bodie was, again, they found no Eighth Amendment violation in conduct that was, for abusive conduct that was accompanied by COs verbal humiliation, violence, threats of violence, involving the inmate's uncovered genital area where the inmate was victimized on multiple occasions, and even in certain situations where the inmate was caused physical injury or pain. So from those district court decisions, those district court decisions are evidentiary of the fact that a reasonable CO, again, as deplorable as this behavior was, and certainly as not okay as it was, perhaps contrary to the industry-leading efforts of DOCS, the New York State prison system, to stamp out this behavior, nevertheless did not violate the Constitution. Your Honors, unless there are further questions, I think the proliferation of district court cases in this area is ample evidence that if a district court judge could not decide whether conduct at this level violated the Eighth Amendment, did not know that for sure, that a reasonable CO would not have found it clear either. You, as I understand it, you don't make a specific argument as to Superintendent Brown. Is it your view that Mr. Brown's immunity, Superintendent Brown's immunity, is derivative of Pindell's immunity? That's right. We think Mr. Brown stands in a supervisory posture, so assuming, as we've argued, that the underlying conduct of CO Pindell is entitled to qualified immunity, then by extension the supervisory conduct or lack of conduct, whatever you want to call it, of Brown is likewise entitled to qualified immunity because he didn't know that he was clearly aiding and abetting. However, the other side characterizes it, these Eighth Amendment violations, because Pindell on the ground didn't know that he was committing them. Unless there are further questions. Thank you, Your Honor. Thank you. So, first of all, I want to make clear, I think counsel misstated our position. The conduct here, in our view, is worse than the conduct in Bodie, and that could settle the question right there. I mean, you don't have to go beyond that with a broad decision. The conduct here was forceful, it was grabbing, it was fondling, and it was mail-on-mail with other males present to back up the person who did it, who are also unnamed defendants, but defendants in the case, John Doe defendants in the case. So, number one, it's worse than Bodie. Number two, Bodie is 14 years earlier. Pria is past. I don't know how old Officer Pindell is, but I suspect he was a kid at the time that Bodie was decided. Fourteen years past, and there is a growing social consensus that is crystallized as of 2003 in the Prison Rape Elimination Act that this is unacceptable behavior. That was a congressional statute, we don't have these anymore, that was unanimously passed in Congress. That, I submit, is a far better indicator of contemporary social mores as of 2003 than these district court decisions. Finally, I want to point out, and I hate to say this, but this is kind of why we don't consider district court decisions in developing the law in this area. This is why it's appropriate to look at the considered judgment of appeals courts, of legislatures, and congressional enactments in this area. I think we learn a lot from everyone. We do, but that's sort of a technical difference in this Court's pronouncements on how to determine what are contemporary social standards, and we don't learn much, respectfully, Your Honor, when a district court blesses the penalogical justification. The statements on this since Bodie have been flat statements from the courts of appeals, that sexual abuse is not tolerated. Now, you can debate until the cows come home what's sexual abuse and what's not. At the end of the day, we're entitled to take discovery on that question, see what Prindle's penalogical justification for the groping was, and they can make their summary judgment motion if it doesn't rise to the level of sexual abuse. But these naked allegations are adequate, and it's ridiculous for an employee of the State of New York, as of 2011, to say, well, I didn't know it was illegal. I wasn't on notice that we're not allowed to grope our prisoners. And here's how we know that. We know that because a month after this conduct, one of our defendants here, Brian Fisher, gave testimony where he said that the Department, the Department of Corrections, has made it clear to staff and offenders alike that it is a fundamental right, a fundamental right of all incarcerated persons to be free from the threat of physical violence and abuse of any type, including sexual abuse. When he's talking about fundamental rights, he's not just telling the officers, ah, you can't do it, don't molest our inmates. They have a right, a fundamental right. And if we can't enforce it in these courts, there's not going to be any way to enforce it. We depend on the federal courts and the appellate courts to make these rights a reality. Thank you. Thank you both for your arguments. The court will reserve decision.